## ORCUTT *vs.* ORMS, administrator, &c.

A plea which sets up no valid defence to any part of the matter it professes to cover, should be overruled absolutely, and will not be permitted to stand for an answer.

The court may permit a plea to stand for an answer, if it contains matter which, if put in the form of an answer, would have constituted a valid defence to some material part of the matter to which it is pleaded in bar.

By allowing a plea to stand for an answer, the court decides that it contains matter of defence ; but that it is not a full defence to all which it professes to cover, or that it is informally pleaded, or that the defence cannot properly be made by way of plea, or that the plea is not properly supported by answer.

If a plea to the whole bill, unaccompanied by an answer, is allowed to stand for an answer without reserving to the complainant the right to except, it is to be deemed a full answer, though not necessarily a perfect defence.

Where a plea is ordered to stand for an answer, with liberty to except, or the plea is accompanied by an answer, which will enable the complainant to except without special leave, the master, upon a reference of the exceptions, must decide as to the sufficiency of the answer, considering the plea as a part thereof.

Where a creditor of an intestate sued the administrator, at law, and the latter pleaded plene administravit, and the creditor thereupon confessed the plea and took judgment of assets in futuro, and afterwards filed a bill in this court against the administrator for the satisfaction of his judgment ; *Held,* that the creditor was estopped from alleging that the defendant had any assets at the time the plea was put in by him in the court of law ; and that the defendant was not liable for any part of the assets which had been lost previous to that time, by his neglect.

Where this court and a court of law have concurrent jurisdiction of the subject matter of a suit, if the plaintiff elects to proceed at law in the first place, the decision of the question in that court will be conclusive upon the rights of the parties in a subsequent suit here, to the same extent that it would have been in a new suit at law, in relation to the same matter.

If an administrator sells leasehold property belonging to the estate of the testator upon credit, without taking proper security, he will be liable for a loss arising from the insolvency of the purchaser.

Where the personal property of an intestate consisted of stages and stage horses, belonging to a daily line running from one state into another, it seems that the rights of the administrators, appointed in the respective states, do not depend upon the fact of the property being in the one state or the other at the moment of the death of the decedent.

ORSON MARTIN resided at Poultney, in the state of Ver-  August 27,
mont, and was at the time of his death engaged in running a

line of stages, and transporting the mail, from the city of Albany into the state of Vermont. The stage stopped over night at Poultney, about five or six miles from the line of this state, where the team which ran from thence to Hebron, in the county of Washington, was kept over night. Martin died in 1815, and the defendant, at the request of his widow, shortly after his death, took out letters of administration from the probate court of the district in which he died. The defendant took into his possession most of the personal estate and effects of the decedent, both in this state and in Vermont; and continued to run the stages through the season. Finding it necessary to take out administration in this state, to enable him to collect some of the debts and to reach some of the property of Martin here, particularly a leasehold property in the city of Albany, he applied to and obtained from the late court of probates letters of administration. In September, 1815, he made an inventory of the property in this state, which he filed in the office of the judge of probates in May thereafter. About the middle of October, 1815, the defendant sold the leasehold property in Albany, at auction, to J. Branch for $1500, one half payable in a few days, and the residue on the first of January, 1816; and he transferred the property to the purchaser, and took his notes for the purchase money, without security. The first note was paid; but before the other became due, Branch failed, and was afterwards discharged under the insolvent act, and the second note was wholly lost. At the October term of the supreme court, in 1815, the present complainant commenced a suit against the administrator for a debt due him from the intestate. In January term, 1816, the defendant pleaded in that suit the general issue, and also that he had fully administered, &c.; and in a third plea, he set forth the recovery of two several judgments against the intestate in his life time, and one against himself as administrator, and alleged that he had fully administered all the assets which had come to his hands, except a small amount insufficient to satisfy those judgments. The plaintiff admitted the truth of the two last pleas, and a venire was awarded to try the general issue. In August term, 1816, the defendant gave a relicta and cognovit on the first plea, and judgment was thereup-

on entered for the complainant's debt, to be levied of assets *quando acciderint.* Eight years afterwards the complainant field his bill in this cause against the administrator, founded on that judgment, complaining of a fraudulent inventory, and calling for an account of the administration of the defendant, and for satisfaction of the judgment out of the estate in his hands. To this bill the defendant pleaded the proceedings in the suit in the supreme court, and the judgment thereon, and averred that no goods or chattels had come to his hands since the rendition of that judgment. The late Chancellor Jones overruled the plea; with permission however to the defendant to let it stand for an answer as far as it went, with liberty to the complainant to except. The defendant afterwards put in an answer, giving therein an account of his administration, and also setting forth the substance of the facts contained in the plea, as a bar. The cause was thereupon heard on pleadings and proofs.

*J. Willard,* for the complainant.

*John Crary,* for the defendant.

THE CHANCELLOR. I am not informed as to the reasons upon which the decision of the late chancellor, overruling the defendant's plea, was founded. But as he gave the defendant permission to let it stand for an answer, as far as it went, he must have arrived at the conclusion that the facts therein stated might form a defence, or part of a defence to the suit. For if a plea contains nothing which can be a valid defence to any part of the matters which it professes to cover, it will not be allowed to stand for an answer, but should be absolutely overruled. When a plea is allowed to stand for an answer, it is determined that it contains matter which if put in the form of an answer, would have constituted a valid defence to some material part of the matters to which it is pleaded as a bar, but that it is not a full defence to the whole matter which it professes to cover, or that it is informally pleaded, or is improperly offered as a defence by way of plea, or that it is not properly supported by answer. (*Mitford,* 4*th Lond. ed.* 303. *Lube's Eq. Pl.* 46.) If a simple plea to the whole bill,

unaccompanied by an answer, is allowed to stand for an answer, without reserving to the complainant the right to except, it is to be deemed a sufficient answer, though not necessarily a full and perfect defence to the whole bill. (*Sellon* v. *Lewen*, 3 *Peer Wms. Rep.* 239.)  But if the plea is ordered to stand for an answer, with liberty to except, or is accompanied by an answer, which will enable the complainant to except without such special leave, the master upon a reference of the exceptions must enquire and ascertain whether the bill is fully answered, taking the plea as a part of that answer; unless the court, in permitting the plea to stand for an answer, as in the case of *Kirby* v. *Taylor*, (6 *John. Ch. Rep.* 254,) declares as to what part of the bill it is to be considered a good defence.  The court, however, sometimes prohibits the complainant from calling upon the defendant, by exceptions, to discover particular matters as to which he is not legally bound to answer.  Thus in *Brereton* v. *Gamul*, (2 *Atk.* 240,) and in *Bagley* v. *Adams*, (6 *Ves, jun.* 586,) the pleas were ordered to stand for answers, with liberty to the complainants to except, save as to calling upon the defendants for accounts. In this case, by the decision of the late chancellor, the defendant was compelled to give a full account of the assets of the intestate which had come to his hands as administrator, as well before as after the plea of plene administravit; which seems to have been unnecessary if the chancellor arrived at the conclusion that the proceedings in the former suit were a bar to the claim upon assets which had been received before that time.  I presume, however, that the chancellor must have come to such conclusion although the defendant was compelled to put in a full answer, as I can discover no other ground upon which the plea could have been permitted to stand for an answer.  And upon a careful examination of the question, I am satisfied that to this extent the facts stated in the plea protected the defendant from an account as to any assets received by him before the pleas of plene administravit, &c. in the supreme court.  The complainant had a right to come into this court in the first place for a discovery and account of the estate of the intestate which had come to the hands of the administrator, and to have his debt satisfied out

of the same ; or he might elect to sue in a court of law, and to enquire as to the state of the assets upon an issue joined on the plea of plene administravit. Having elected to prosecute his suit at law, if he did not wish to be precluded by the pleas of the administrator, he should have joined issue thereon and have established their falsity ; or he should have submitted to a nonsuit by which the right to call for an account here would have been preserved. In cases where this court has concurrent jurisdiction with courts of law, a judgment at law ought to have the same effect in this court, upon the rights of the parties as to a re-examination of the same question, as it would have in a court of common law, if there has been no fraud and undue means used to obtain the legal bar. There is no evidence here that the complainant was induced to admit the truth of the defendant's two last pleas in consequence of any fraud practised upon him by the administrator. The inventory of the estate, even if it were false and deceptive, could not have induced him to adopt that course ; as it appears by the record that he confessed those pleas, and prayed judgment of assets, quando, &c. previous to the filing of that inventory. In the case of Tayler v. Holman, (Buller's N. P. 169,) where the executor had pleaded plene administravit in the original action, and the plaintiff instead of contesting the truth of that plea took judgment of future assets quando acciderint, and afterwards brought a suit upon the judgment suggesting a devastavit, Lord Mansfield refused to allow the plaintiff to give any evidence of assets come to the defendant's hands before the judgment. Similar decisions at nisi prius have also been made by Lord Chief Justice Eyre, and by Chief Baron Parker. And in Mara v. Quin, (6 Durn. & East's Rep. 1,) upon a scire facias on such a judgment, the court of king's bench decided that the plaintiff must aver that assets had come to the defendant's hands since the judgment, and that the plaintiff must pray execution against those goods only. Lord Kenyon, Ch. J. in that case says, " in point of convenience, it is right that such should be the rule of law ; for if it were permitted to a creditor to litigate for a second time that which had once been settled between the parties either by a verdict or by admission, the executor would be harrassed and involved in infinite

expense and litigation." In that case, however, the court permitted an amendment of the original judgment, so as to cover the assets which had come to the defendant's hands after plea pleaded but before the judgment was entered thereon. In the case now under consideration the form of the judgment was such as to cover any assets then in the defendant's hands to be administered. But as the complainant admitted upon the record that the second and third pleas were true, he is estopped from alleging that the defendant had any assets at the time those pleas were put in, at the January term, in 1816. The plea which was originally filed in this suit was defective as a defence to the whole bill, because the complainant was entitled to a discovery as to any assets which might have come to the defendant's hands after that time. Although the plea contained an averment that no goods had come to his hands after the rendition of the judgment, that did not cover the intermediate time between the judgment and the plea. And if any thing had been received during that time the complainant had a right to the same ; provided such assets were more than sufficient to satisfy the prior judgments mentioned in the third plea to the original suit. The plea should also have been supported by an answer ; as the complainant had a right to call for an account of the assets, if any, which had come to the defendant's hands after January term, 1816. But the plea was good in substance, and was a sufficient answer and a valid defence to so much of this bill as seeks a satisfaction of the complainant's demand out of any thing for which the defendant might have made himself liable as administrator previous to that time. The defendant was technically liable for the loss on the sale of the leasehold property, arising from the insolvency of Branch. There was no fraud, however, in that transaction, but only a mistake of the defendant as to his right to sell the property on a credit. And he is perfectly excusable for interposing a technical estoppel as a defence against such a claim. That property was assets in his hands at the time of the sale, and the loss arose from his selling the property on a credit and without proper security. It is therefore not material to enquire whether Branch became insolvent before or after the

putting in of the plea of plene administravit. It appears, however, that the note had become due previous to that time.

The complainant has proved that Martin had some property in this state, at the time of his death, which is not mentioned in the inventory and which actually came to the possession of the defendant. This is satisfactorily explained in the answer so as to rebut all presumption of fraud in relation to that inventory, whatever may have been the legal liability of the defendant under the letters of administration granted in this state. It appears he was also the administrator of Martin in the state of Vermont under a previous appointment. As the intestate resided there at the time of his death, and from the nature of his business the property was constantly changing from one state to the other, it was perfectly natural that the property which was found at Poultney at the time administration was granted in that state should be inventoried and accounted for there, whichever side of the line it might have chanced to be at the moment of Martin's death. It appears from the testimony that one stage and four horses could not have been many rods from the state line when Martin died; the same having left the stage house in Poultney, five and a half miles distant from that place, only one hour before. And I presume, from the manner in which the stages usually run, that this stage and team must have returned to Poultney again the same evening. Under such circumstances, if administration had been granted to different individuals in the two states, I think the property must have been considered as belonging to that administrator who first reduced it to possession within the limits of his own state. But in this case as both administrations were granted to the same person, if an account of his administration was now to be taken here, it might be necessary to enquire whether he had inventoried and accounted for this property as a part of the estate which actually came to his possession as administrator in the state of Vermont.

As the seven dollars and fifty cents collected of Hawley was due from a debtor of the intestate residing in this state it probably must be considered assets to that amount under the administration here, although the debt was actually in-

ventoried in the other jurisdiction. (*Godolph. Orph. Leg.* 70. *Thompson* v. *Wilson*, 2 *New-Hamp. Rep.* 291. *Stearns* v. *Burnham*, 5 *Greenl. Rep.* 261.) But as there is no evidence from which it can fairly be presumed that any other effects have come to the hands of the defendant since the January term, 1816, and as this sum is wholly insufficient to satisfy the previous judgments which are entitled to a preference in payment, it would be a useless expense to the complainant to direct a reference. The bill must therefore be dismissed, with costs.