BANGS et al. *vs.* STRONG et al.

An interlocutory order of the court of chancery, affirmed in the court of errors, allowing a plea, or overruling it on a technical ground but ordering it to stand for an answer, is an adjudication that the matter of the plea, if true, is a good defence to the bill, and the parties to such order are conclusively bound by that determination in all the future proceedings in the cause.

Thus, where to a creditor's bill one of the judgment debtors put in a plea alledging that he was a surety merely, and was discharged from the debt by reason of an agreement made *after judgment* between the creditor and the principal, extending the time of payment; and on argument of the plea the court of chancery overruled it on a technical ground, but held the matter of the plea a good defence, and allowed it to stand for an answer; and the order was afterwards affirmed by the court of errors; *held*, that on the final hearing of the cause on pleadings and proofs after the truth of the plea had been established, the effect of the agreement on the rights of the surety was not an open question, but had been conclusively determined in his favor by the previous order.

A valid agreement extending the time of payment to the principal debtor, *it seems*, discharges the surety, although such agreement is made after judgment both upon the contract.

The judgment it seems does not extinguish the relation of principal and surety, between the debtors, nor destroy the sureties' right of subrogation.

BILL filed by Bangs and Alcott to obtain satisfaction of a judgment in the supreme court in their favor against Joseph Strong and Maltby Strong, rendered Oct. 30, 1838. M. Strong put in a plea to the bill, supported by an answer, to all the relief and a part of the discovery prayed for, setting up an agreement made on the 12th of August, 1839, between J. Strong, the other judgment debtor, and the plaintiffs, by which time was given to the former to pay the judgment, and the plaintiffs became

[316] bound to receive in payment land instead of money, and alledging that J. Strong was the principal debtor and M. Strong the surety, and that by such agreement M. Strong was in equity discharged from all liability on the judgment. The cause was heard before the vice chancellor of the eighth circuit, upon the bill and plea of M. Strong, and he decided against the plea, on the ground that the agreement set up in it gave no time to the principal debtor. The chancellor, on appeal to him, held that the agreement operated to discharge M. Strong as the surety, from the judgment, unless it should appear that it was procured by the fraudulent representations of J. Strong, or had been sanctioned by M. Strong. But he held also, that the answer accompanying the plea covered a part of the same ground as the plea. For that reason he overruled the plea and directed it to stand for an answer. (*See* 10 *Paige*, 16.) On appeal to the late court for the correction of errors, the decree of the chancellor was unanimously affirmed. (*See* 7 *Hill*, 250.) The plaintiffs afterwards replied to the plea, and the cause came again to a hearing on pleadings and proofs, before the vice chancellor of the eighth circuit, who dismissed the bill as to M. Strong and Everard Peck, one of the defendants to whom M. Strong had made an assignment of real estate on the 27th of October, 1838, in trust to pay his creditors, and which assignment was alledged in the bill to be fraudulent. This decision proceeded on the ground that by the agreement set up in the plea, and which had been established by the proofs, M. Strong was discharged from all liability on the judgment in question. The plaintiffs appealed to the chancellor, who affirmed the decree, and then they appealed to this court.

*N. Hill, Jr.* for appellants. I. The assignment by Maltby Strong to Everard Peck was made to hinder, delay and defraud creditors, and was therefore void. It provides for giving preferences, and empowers the assignee to sell not only, but to *lease* or *mortgage;* thus taking away the right of the creditors to have the property converted into money *without delay.* (3 *Barb. Ch.* [317] *Rep.* 644, 646; 2 *Comst.* 365, 371; 11 *Wend.* 189; 10 *Paige,*

229.) It provides also for paying the assignee such compensation as shall be determined by three persons, who are named; thus enabling those persons to award the assignee any portion of the fund they think proper. (2 *Comst.* 365, 372.) If either of the provisions adverted to are illegal, the whole assignment is void. (5 *Cowen,* 580; 14 *John.* 465; 20 *id.* 449; 11 *Wend.* 189.) The assignment moreover is shown to be fraudulent by evidence *aliunde.*

II. The agreement of August 12, 1839, signed by J. Strong and Wm. W. Alcott, having been entered into after judgment against Joseph and Maltby Strong, did not discharge Maltby. The principle on which the surety is discharged by giving time to the principal is, that it *alters* the contract by which the surety agreed to become liable, and not that this alteration is to his *prejudice;* for though it be *beneficial* to him, the result will be the same. (2 *Meriv.* 277; 8 *Dowl. &. Ry.* 22.) Where the original contract is given up or merged, and another substituted, by the consent or default of the surety, the principle no longer applies. And hence, after the surety has put the creditor to the necessity of suing and obtaining judgment on the original contract, the act of giving time to the debtor is no defence. (5 *John. Ch.* 305; 3 *Wheat.* 520, 525, 6; 2 *McLean,* 44; 2 *Chit. Rep.* 125; 5 *Howard,* 192, 205; 3 *Denio,* 157; 2 *Barb. S. C. Rep.* 484.) These cases proceed upon the ground that the judgment *extinguishes* the original contract, and substitutes a *new obligation or security for the debt;* and that neither the creditor nor the surety can resort to that contract to ascertain or enforce their rights. The doctrine is familiar and extensive in its application. (2 *McLean,* 168; 18 *John.* 459, 483; 9 *Ser. & Rawle,* 142, 145, 146; 13 *Mass.* 148; 11 *Gill. & John.* 11; 1 *Ham.* 157; 1 *Watts & Serg.* 334; 6 *Whart.* 264.)

Maltby Strong has no right to ask that the court shall go behind the judgment to protect an equity arising out of a contract which he has refused to perform, and which he has compelled the creditors to relinquish for a new and different obligation. His rights are no greater, to say the least, than if he had voluntarily given a second security binding himself as principal.

[318] (14 *Peters*, 201; 10 *id.* 257.) Besides, in this case it is manifest that the pretended equity consists of a mere technicality; it being clear that Maltby Strong has not been *prejudiced* in the slightest degree by the arrangement of the 12th of August, 1830, but *benefited* rather. The defence is unconscientious, and should be overruled, unless the court are compelled *ex rigore juris* to allow it. Under such circumstances, equity follows *the law*.

III. But the agreement of the 12th of August, 1839, if entered into without the authority of Maltby Strong, was not binding on the appellants, and therefore did not discharge Maltby. It is clear from the facts proved relating to the execution of the agreement that Joseph Strong induced Alcott to believe that Maltby had assented to or authorized it. The agreement having been obtained by a fraud practised upon the appellants, Maltby can not avail himself of it. For he must show an agreement binding as between the appellants and Joseph in equity as well as at law. (3 *Whart.* 407; 1 *Comst.* 274.) Nor can the surety avail himself of it, for the same reason, if the creditor acted under a *mistake;* especially if the mistake was occasioned by the conduct of the principal. (1 *Story's Eq.* §§ 134, 140, 149; 2 *Cowen*, 129.)

*O. Hastings*, for respondents. I. The decree of the court for the correction of errors was a final adjudication, and is conclusive against the appellants on this appeal. A decree, sentence or judgment, directly on the point, is always conclusive between the same parties. (*Gardner* v. *Buckbee*, 3 *Cowen*, 120, *and the cases there cited.*) So an interlocutory decree establishing the rights of the parties, can not be reviewed on the final hearing. (*Mapes* v. *Coffin*, 5 *Paige*, 296; *Bank of Orange Co.* v. *Fink*, 7 *id.* 87; *Kane* v. *Whitbeck*, *per Sutherland, J.* 8 *Wend.* 234, *and per Maynard, senator*, 246.) After a plea has been allowed on argument, nothing but the truth thereof remains in issue between the parties. (*Story's Eq. Pl.* § 697; *Lube's Eq. Pl. part* 1, *ch.* 4, § 3, *part* 2, *ch.* 1 *and* 4; *see also Starr* v. *Child*, [319] *in court of appeals, December*, 1849.) The replication

admits that the plea, if true, is a bar.    The bill virtually admits the same, and it is now too late for the appellants to take new ground.

II. If the question should still be deemed open, the respondent, M. Strong, insists that the relation of principal and surety with all its rights and incidents, continued between him and J. Strong after the judgment, and that the agreement of August 12, 1839, discharged him from all liability to the appellants. A judgment at law determines nothing between the defendants. It does not alter their relation to each other.    A defendant who was a surety in the obligation upon which the judgment was rendered, may, after the judgment as well as before, prove the fact of his suretiship in a court of law, and avail himself of any right of action or defence, growing out of that relation.    (*Carpenter* v. *King*, 9 *Metc.* 411; *Commonwealth* v. *Miller*, 8 *Serg. & Rawle*, 452 ; *Commercial Bank* v. *Western Reserve Bank*, 11 *Ohio R.* 444; *Mauri* v. *Heffernan*, 13 *John.* 58 ; *Hunt* v. *Amidon*, 4 *Hill*, 345.)    But whatever may be the rule at law, it is well settled that in equity, any arrangement between the creditor and principal debtor, which interferes with the right of the surety to pay the debt, and demand from the creditor an immediate cession of all his remedies against the principal, will discharge the surety, if such arrangement was made without his consent. (*Bangs* v. *Strong*, 7 *Hill*, 250, *and authorities there cited by respondents' counsel; Storms* v. *Thorne*, 3 *Barb. S. C. Rep.* 314, *and cases there cited; Story's Eq. Jur.* §§ 325, 833.)    The agreement of August 12th, 1849, is clearly within the rule on which courts of equity decree a surety to be discharged.    (7 *Hill*, 250.)

III.    The proof fails to invalidate the agreement.    It does not establish the alledged fraud of J. Strong, or the assent or sanction of the respondent, M. Strong.

Hurlbut, J.    When the plea of the defendant, Maltby Strong, setting up the agreement of the 12th of August, 1839, in bar to the relief sought by the bill, was first brought before the chancellor, it was objected against by the plaintiffs, both in respect to form and substance ; but was relied on by the de-

[320] fendant as containing matter which went to his complete discharge from the judgment which it was the object of the bill to enforce. The chancellor, in his opinion, discussed the merits of the plea, and came to the conclusion that, if it was true, Maltby Strong was discharged from the judgment. But the plea was accompanied by an answer covering some part of the relief and discovery embraced by the former, which operated technically to overrule it; and it was therefore ordered to stand for an answer, with liberty to the plaintiffs to except. On appeal from this order by the plaintiffs to the court for the correction of errors, they again contended that the matter of the plea did not constitute a defence. And this appears to have been the only question made in that court. It was, however, determined that the rights and obligations of the parties were so materially affected and changed by the agreement set up in the plea, as that the defendant Maltby Strong, standing in the relation of surety to Joseph Strong, was discharged, and hence that the matter of the plea was a substantial defence. The order of the chancellor was therefore affirmed. (*See* 10 *Paige,* 11; 7 *Hill,* 250.)

In my judgment this was a conclusive determination of the main question presented on the present argument. The merits of the plea were necessarily involved in these decisions. If it had not stated good matter of defence it would have been absolutely overruled, and not ordered to stand for an answer. This order of itself implied, what the opinions delivered in support of it maintained, that the plea contained a substantial answer to the relief sought by the bill. The defect which deprived it of efficacy as a plea, was purely of a technical character. The matter of the plea was approved, while the manner of it only was condemned; and by ordering it to stand with the effect of an answer, its merits were as directly and conclusively passed upon by the court, as if it had been allowed as a plea. Whether, taken in connection with the answer which accompanied it, it was full and sufficient, could only have been determined upon exception. But no question of that sort arises here. We must, therefore, hold that the order of the chancellor, which was af-

firmed on appeal, was a conclusive determination be- [321] tween these parties, that the matter of the plea, if true, was a good defence. (*Mitf. Ch. Pl.* 302, 304; *Orcutt* v. *Orms, 3 Paige,* 459; 1 *Barb. Ch. Pr.* 122.)

The agreement set forth in the plea being proved, the suit, so far as the plea extends, is barred, unless there is something in the other grounds relied on by the learned counsel for the appellants, which must be held to qualify the operation of the agreement, or to deprive it of legal effect. We might find enough in the evidence to warrant us in holding that the agreement was made with the knowledge and approbation of Maltby Strong, if it were not for the very explicit denials of this fact contained in the plea and answer. These are verified by the oath of the defendant, and are responsive to the bill, and at the utmost can not be considered as contradicted by more than the testimony of one witness. The defendant's statement must therefore be taken as the truth of the case.

I find no evidence of any representation on the part of Joseph Strong that Maltby had authorized or consented to the making of the agreement. The witness, Abner Pratt, was interrogated on this point, but he did not feel assured that any such representation was made. He stated, however, that it was his understanding at the time of the agreement, that Joseph Strong was entering into it in behalf of himself and Maltby Strong. Whether he derived this impression from the fitness of the thing, from the recital in the agreement, or from Joseph Strong's going out, as he supposed, to consult his brother, the witness did not state, nor is it very material ; for, unless Joseph Strong, or some one who was instrumental in procuring the agreement, gave out in some manner, and so as to induce Allcott to believe that Maltby Strong consented to it, the mere impressions of the witness, as stated by him, can have no influence in the determination of this question. He states no fact from which the court can infer that Joseph Strong made the representation referred to.

It was urged, however, that the agreement on its face affords evidence of such a representation, by reciting that it was made

[322] " in behalf of the respective parties ;" i. e. the plaintiff and the defendants Joseph and Maltby Strong. Taking these words as the language of Joseph Strong, they do not fairly import more than that he assumed to act for the benefit of himself and Maltby Strong, leaving it in doubt whether he acted by express authority or not. As to that the writing is silent. That he might thus have assumed to act without misleading Allcott in respect to his authority or the consent of Maltby Strong, is obvious from the circumstances of the case. Allcott knew that Joseph Strong was the principal debtor, who ought in conscience to satisfy the judgment. It was his right and his duty to arrange for its payment. In doing so he was discharging his own proper obligation, and also relieving his surety from the burthen of a debt. He was thus in a sense acting in behalf of that surety. If Allcott had desired the express consent or authority of the latter, it is reasonable to suppose that he would have made a point of it, and that the language employed by the parties in the course of their negotiation, would have shown that he had done so. But this does not appear from the evidence. The only witness who was present, could not state that any verbal representation was made on the subject; and as the language of the recital cannot be held fairly to import that Joseph Strong represented himself as acting with the authority or consent of his brother, the objection to the agreement, based on the assumption of such a false representation, cannot be sustained.

In the absence of all fraud, it was competent for Joseph Strong to agree for the payment and discharge of the judgment, without the authority or consent of Maltby Strong; and I perceive nothing in the case which should prevent the agreement in question from taking full effect.

I am of the opinion that the decree of the chancellor should be affirmed.

All the judges concurred.

PRATT, J. The question as to the effect of the agreement between J. Strong and the plaintiff upon the liability of Maltby

Bangs *v.* Strong.

Strong was adjudicated by the chancellor in this case, [323] (10 *Paige*, 16,) and by the court for the correction of errors, in 7 *Hill*, 250. Although no question was then made upon any supposed distinction in relation to the effect, upon the liability of a surety, of an agreement to extend the time of payment before or after judgment, yet the precise question in this case was necessarily passed upon by the courts in that case ; and the question is therefore *res adjudicata* as between the parties to this suit. But if it may be considered an open question, the decision was clearly right. The recovery of a judgment against the surety does not merge or destroy his character as such, or the relation which he sustains to his principal. Its only effect is to change the form of the security as between him and the debtor. Merging the contract between the creditor and the principal debtor or surety can not affect the relation between the principal and surety. This relation is not necessarily created by the contract to which the creditor is a party, but may be created even without his knowledge. Joint debtors may, by an independent arrangement between themselves, change their relations to each other as such, and create the relation of principal and surety to each other without the knowledge of the ~~principal.~~ *creditor*. So long as he is ignorant of the change he would not be affected by it ; but as soon as he receives notice of the relation, the rights of the surety are the same, as against him, as they would have been if the relation had been created by the original contract.

That the character of the surety, as such, is not merged or destroyed by the recovery of a judgment against him, is evident from the numerous cases where both courts of law and equity admit testimony dehors the record to establish his character of surety. If he should pay the judgment, courts of law would sustain the action of assumpsit to recover back the money from his principal, or contribution from his co-surety. No embarrassment would be felt in admitting parol evidence to establish the fact of suretiship. So if the creditor has in his possession collateral securities belonging to the principal debtor, the surety, on paying the judgment, may apply to a court of equity for an

[324] assignment to him of those sureties. Has it ever been doubted that parol testimony, in such cases, is admissible to establish the relation of principal and surety? This right of subrogation is one of the clearest and most well established principles of equity jurisdiction. It has been said " that it is scarcely possible to place this right of substitution too high ;" (*Hodgson* v. *Shaw*, 3 *Myl. & Keene*, 183 ;) and that " it does not rest upon contract, but upon the broader and deeper foundations of natural justice and moral obligation." *Aiken* v. *Matthews*, 1 *Comst.* 600.) If the right of subrogation does not rest upon contract, it is clear that the recovery of a judgment can not affect this right.

But if the right of subrogation is so high and so sacred, resting upon the sacred principles of natural justice and moral obligation, is it possible that the creditor would be allowed, in a court of equity, to interfere with or destroy this right with impunity? That for the purpose of enforcing it where it had not been impaired, a court of equity would recognize the relation of principal and surety even after judgment, but would refuse to recognize the relation when the complaint was against the creditor that he had impaired the right? If the court will trace the relation, notwithstanding the judgment, for the purpose of enabling the surety to sustain his action for money paid against his principal, or for contribution against his co-surety, or for subrogation against the creditor, why should its powers be paralyzed in this solitary case, especially a case so intimately connected with this right of subrogation? I insist that no satisfactory answer has been given, in any case where the distinction has been recognized. The plaintiff's counsel insisted upon the argument that the discharge of the surety was based upon a change of the contract without his consent—that when the time of payment was extended, or any other stipulation entered into between the creditor and principal debtor, changing the conditions of the contract, the surety had a right to say *non veni in fœdera*, and he cited several authorities to support that position. (*Burge on Suretiship*, 214 *to* 217 ; 4 *Wash. C. C. R.* 28 ; 9 *Wheat.* 703.) Doubtless there are cases where the discharge of the surety

might well be put upon this ground, but generally his liability is discharged upon entirely different principles. It no [325] more changes a contract as to a surety than it does as to a joint debtor; and yet it is clear that an extension of the time of payment to one joint debtor without the consent of his co-debtor, would not discharge the latter. The true ground upon which the liability of the surety is discharged, is that his rights against his principal are impaired or at least affected. It was upon this ground that Chief Justice Bronson placed his discharge when this case was before the court for the correction of errors. He said there that it interfered with his right of subrogation; that upon payment of the debt he was entitled to be "substituted in the creditor's place as to all securities and means of enforcing payment which appertained to such creditor."

In this case, previous to the arrangement between the plaintiffs and J. Strong, Maltby Strong had the right to pay up the judgment, and to be substituted in the place of the plaintiffs as to all the means of enforcing payment against the principal debtor. But by the arrangement his condition was materially changed. Upon payment of the judgment he would not only have found himself delayed in enforcing payment as to time, but the debtor had the right by that arrangement to pay in land. His rights against his principal were thus materially changed without his consent. The court therefore will not stop to inquire into the extent of the injury which he may have sustained, but will hold him entirely discharged from his liability. In the language of the civilians, they will hold such agreements between the creditor and principal debtor conclusive evidence of an intention to vacate the debt and discharge the surety. (*Story's Eq. Juris.* 325, 833.)

Whether courts of law will follow the same rule as courts of equity, it is not necessary to inquire. All the remedies to which sureties are now entitled, either against their principals, the creditor or co-sureties, originated in courts of equity, and whenever courts of law have taken cognizance of the same matter, they have simply extended their jurisdiction to matters over which courts of equity had already undoubted jurisdiction. I see no

reason why courts of law, within the principles upon which they [326] have long acted, would not hold an agreement of this kind a defence to an action, on the judgment especially, as it is now well settled that an arrangement of the same character would discharge the surety upon precisely the same principles before judgment; but whether they would or not, it can not affect the question in a court of equity, wheie the whole doctrine in relation to rights and privileges of sureties originated. The judgment of the supreme court should be affirmed. (*Samuel* v. *Hawarth,* 3 *Meriv.* 271; *Spiner, Eq. Jur.* 637; *C. C. Cooper App.* 515, *all the cases collected.*)

Decree affirmed.