No. 65.—NATHAN H. BEALL, executor, &c. plaintiff in error, *vs.* SAMUEL R. BLAKE and others, trustees, &c. defendants in error.

[1.] When a plea to a bill in Chancery is adjudged a good defence in part, and ordered to stand for an answer, it is a sufficient answer to so much of the bill as it covers, unless by the order liberty is given to the complainant to except.

[2.] When a defendant consents to answer, or having pleaded, is ordered to answer, he must answer fully.

[3.] Interrogatories in a bill cannot enlarge or contract the case made by the allegations in the bill. The defendant is bound to answer all *material* interrogatories, and if the answer, being in the affirmative, the admission would be of any use to the complainant, either to assist his Equity, or to advance his claim to relief, the interrogatory is material.

[4.] In a bill filed by legatees against an executor, calling for an account of usurious interest made upon the funds of the estate, he must answer as to the amount of money loaned—at what rate—when and with whom usurious contracts were made—how often renewed, and what profit he realized; appending an account of the whole to his answer, according to the best of his knowledge, information, remembrance and belief.

[5.] When a defendant in Equity has in his power the means of acquiring the information necessary to enable him to make the discovery called for, he is bound to make use of such means, whatever pains or trouble it may cost him.

In Equity, in Houston Superior Court. Tried before Judge STARK, May Term, 1851.

This was a bill in Equity, filed by Samuel R. Blake and his wife, formerly Mary Adeline Beall, against the plaintiff in error.

The bill alleges, that Rebecca Bostwick departed this life in the year 1834, leaving an estate of the value of one hundred thousand dollars, and leaving also a last will and testament, whereby she disposed of all of said estate; wherein, after devising several legacies, she directed that the remainder, amounting to eighty thousand dollars, be divided into four equal parts, and be delivered to the persons specified; that complainant and his wife were entitled, under the said will, to one-eighth part of the residu-

VOL X 57

um of said estate ; that Nathan H. Beall, alone qualified as executor of said will, and took into his possesion the said estate, in April 1834.    The bill charges, that upon divers pretences, the defendant has refused to come to a settlement with complainants;   one of which is, that he has been compelled to pay over, by a decree in Monroe Superior Court, one-half of said estate to other claimants, than the legatees mentioned in the will of Mrs. Bostwick ; and that the legacy of complainants must abate in that proportion, while the specific legacies mentioned in the will do not abate.    The bill charges, that this pretence is set up by the executor for the benefit of his daughter, Frances Lumpkin Beall, now Powers, who by said will, claims several of the most valuable slaves and other property ; and denies that the doctrine of abatement of legacies so as to protect specific legacies, applies to the pretended case of the defendant, but only to cases where the property lost, as well as that saved, belonged to the testator.

The bill charges, that the defendant has loaned out the moneys arising from said estate, and from hire of negroes, and rent of land, annually, at usurious interest as high as twenty-five per cent. and compounding annually the same by renewal, and yet he has rendered no account of usurious interest received by him.

The bill prays that defendant may be decreed to come to a full and fair settlement with complainants.

To this bill the defendant filed a demurrer, with specifications in relation to that portion of the bill, that charges defendant with setting up the specific legacies as a pretence why he does not come to a settlement with complainants.

On the 22d day of January, 1845, Judge Tracy, at Chambers, passed the following orders :

" It is on motion of complainants' solicitors, ordered that the said bill be amended, by striking out so much of said bill as sets up as a pretence and charge that said defendant, Beall, retains more than the law allows for the purpose of paying specific legacies.    It is further ordered, that the defendant answer or plead to said bill, on or before the first day of next term."

In obedience to to this order, the defendant filed several pleas; among others he set forth the amendment of complainants' bill, by striking out the charges in relation to the specific legacy to Mrs. Powers. He also pleaded a settlement with Samuel R. Blake, made on the 2d day of February, 1844, and before the filing of said bill, and set up the receipt of complainant, Blake, as a bar to the said bill, which receipt was as follows: "Received of Nathan H. Beall, executor of the last will and testament of Rebecca Bostwick, deceased, eleven hundred and sixty dollars and fifty-one cents, it being in full of the interest of Mary A. Blake, my wife, formerly Mary A. Beall, in and to the estate of Mrs. Rebecca Bostwick, deceased, as settled by a decree in Equity of the Superior Court of Monroe County; saving and reserving such of her interest in and to said estate, as has been heretofore by agreement with said Beall, left to further adjudication. SDMUEL R. BLAKE."

Defendant, pleaded that the "saving and reserving interest," specified in said receipt, relates to an agreement entered into on the 13th day of January, 1844, between defendant, Blake, and the other parties at interest, by which it was agreed that defendant should pay over to Mrs. Powers, the pecuniary legacy in full, and half in value and hire of the negroes bequeathed her in said will of Mrs. Bostwick—the other half of said negroes and hire to be retained in the hands of said defendant, subject to litigation.

The defendant, by an amended plea, set up, 1st. That complainants have no right to recover of him, or receive more than the legal interest. 2d. He is not compelled to answer or disclose the fact of his receiving usurious interest, because the disclosure would subject him to litigation, and to be sued by those from whom he received the usurious interest. 3d. Complainants knew before the settlement referred to in their bill, that usurious interest had been taken by him, from time to time, in the management of the cash of said estate," and as evidence of this fact, he pleaded an agreement between the defendant and complainant, Blake, and other legatees, to the effect that the defendant "agreed to guarantee the legatees against all loss in conse-

quence of usury being successfully pleaded against any of the claims which they may receive from him as executor, &c."

At a subsequent term of the Court, on hearing argument on the plea and amended plea of defendant, the Court passed the following order :

" It is ordered and adjudged that the plea insisting on an account stated and setting forth a settlement and receipt of Samuel R. Blake, of the 2d February, 1844, and the agreement of the 13th January, 1844, be sustained by the Court, so far as relates to said account stated, and the agreement of the 13th January, except as is in said receipt excepted, as a defence in part, and that the said plea do stand for answer. The residue of the plea not relating to the account stated, receipt and agreement, is overruled by the Court, and the amended plea is overruled ; and it is ordered that the defendant answer fully as to the usury, whether he received any, and how much, and when, on the money or effects belonging to said estate, and that he answer fully as to the one-half of the legacy bequeathed to Mrs. Powers, retained in his hands to await litigation, to whom it belongs, and show why he should not account to complainants for their share in said reservation."

In obedience to this order, the defendant answered, " that in his acts as executor of said Rebecca Bostwick, he made no usury. When he, as executor of said will, received money due the estate, he charged himself with the amount and made a return of the same to the Court of Ordinary, regularly. He made and held himself responsible to the estate, for the whole amount of such principal sum received, with legal interest, free from any loss of bad debts to the estate, or any loss of interest, because the money could not be loaned out ; for which he has accounted to the legatees in full, and to complainants in this bill. Any usurious transacions he may have had with other persons, was on his own account, and not with the funds that he regarded the funds of the estate properly so called, because he charged himself with so much money as he collected, and the moneys then so collected were mixed with his own funds, which he used in business of various kinds, and among other things loaned out some money. Defendant did not keep separate the funds of the estate from his own, nor

did he keep an account of the usurious interest made by him, and could not speak with any certainty of these individual transactions of his own. Defendant believes that the sum of principal and legal interest, turned over by him to the legatees, exceeds all the legal and usurious interest and principal which he may have made by his dealings with the estate, when the losses are considered, which fell alone on him."

Defendant answering as to the specific legacy of Mrs. Powers, " shows this reason why he should not account to complainants for their portion of this legacy : that it is a specific legacy; that it was bequeathed to Mrs. Powers and not to them ; that in the settlement of the estate, it was not necessary to pay debts or demands, or for any other cause whatever, to entrench on specific legacies; that defendant is informed that a demurrer was filed to that part of complainant's bill that laid a claim to this specific legacy, or a portion of it ; and at the hearing, on motion of complainant's counsel, the said bill was amended, by striking out that portion of the bill relating to the specific legacy of Mrs. Powers."

To which answer the complainant, filed the following exceptions.

1st. Because the defendant does not answer whether or not he received any usury on the money or dues belonging to the estate, or that were derived from the estate of Rebecca Bostwick, but answers evasively, by saying, " In his acts as executor of Rebecca Bostwick, he made no usury."

2d. He answers, that when he received moneys due the estate he charged himself with the amount, and made a return of the same, but does not set forth nor show such return, nor the amount thereof.

3d. He answers that he mixed up the funds of the estate with his own money, and used and loaned it out as his own, but does not answer to the best of his remembrance, information and belief, the amount of the moneys of said estate so mixed with his estate, and what interest he received or made from loans and dues thus made after such mixture ; he does not answer the per cent. he was in the habit of exacting on loans.

4th. He answers that he believes the amount he turned over to the legatees, in principal and interest, exceeds the amount that came to his hands, when the losses are considered, but does not state nor set forth such amounts received or turned over, nor the amount of the losses.

5th. He states that complainant, Blake, had returns before him, made by defendant, and that from such returns, he knew and was apprised of all the actings and liabilities as executor, but does not set forth, nor show, nor exhibit such returns to this honorable Court.

6th. That such answer is evasive and indirect, and in many parts argumentative.

7th. The defendant does not attach to his answer any account or exhibit of his dealings of many years' standing, with the estate of his testatrix.

8th. That he does not answer facts to the best of his knowledge, remembrance, information and belief.

The Court sustained the exceptions to the answer, and ordered the defendant to answer over, and counsel for defendant excepted.

Powers & Whittle, for plaintiffs in error.

S. T. Bailey, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

To determine whether the exceptions to this answer were well sustained, it is necessary to inquire into the character of the bill, to ascertain to what the plaintiff in error was required to respond. The bill was filed originally to recover the entire interest of the complainants, under the will of Mrs. Bostwick. It sets forth the will—the entering upon its execution by Beall, the executor —the value of the estate which came to his hands—charges that he had refused to settle with them, but under various pretences had for many years retained the estate in his hands, using its funds for his own benefit—loaning them out at usurious in-

tetest; that is, at 25 per centum, or other large rate of interest. It puts into the mouth of the executor divers pretexts for not accounting, all of which it negatives, charging to the contrary. Among them is this, to wit: that the complainants are residuary legatees; that there are large specific legacies bequeathed by the testatrix, to Frances Lumpkin Beall formerly—now Frances Lumpkin Powers—and others; that by a decree in Monroe Superior Court, one-half of the estate conveyed by the will was adjudged to belong to certain claimants against the will; that in consequence of this decree, the legacies of complainants are reduced—the specific legacies not being subject to abatement, but payable in full. The complainants go on to exhibit themselves as residuary legatees under the will of Mrs. Bostwick, entitled to one-eighth of the residuum of her estate, and pray that the executor may be decreed to account fairly and fully with them.

Thus stood the bill primarily. It was a bill calling for a general accounting as to the entire administration of the will, claiming especially that the executor account with them, touching the usurious interest realized upon the funds of the estate, during a long series of years, and also claiming that the specific legacies to Mrs. Powers and others, abate rateably with the residuary legacies, in satisfaction of the decree awarding one-half the estate to certain claimants against the will.

In 1845, the plaintiff in error demurred, especially to so much of the bill as set up a claim to abatement on the part of the specific legacies, and because the specific legatees were not made parties. The record discloses no judgment on the demurrer, as to these special grounds. It is, however, necessarily inferrable that the Chancellor was with the plaintiff in error, and the necessity of a judgment was obviated by the complainants abandoning their claim that the specific legacies abate. For, on motion of complainants' solicitors, it was ordered, "*that the bill be amended, by striking out so much of said bill as sets up as a pretext and charge, that said defendant, Beall, retains more than the law allows for the purpose of paying specific legacies, and that defendant plead or answer to said bill, on or before the first day of the next term.*" We now have the bill curtailed in its propor-

'tions, for the first time, and it is what it was originally, *less the claim to abatement as to the specific legacies,* and the defendant Beall, is ordered to plead or answer.

[1.] In tracing farther the history of this cause, I find that the plaintiff in error filed, in obedience to this order, a number of pleas. He pleaded the amendment to the bill, striking out all the charges relative to the abatement of the specific legacies. He pleaded in bar a settlement in full with complainant, Blake, made on the 2d February, 1844, before the bill was filed, and set forth his receipt, in which he declares that he has received of plaintiff in error, executor of Mrs. Bostwick, eleven hundred and sixty dollars and fifty-one cents, in full of the interest of his wife, Mary A. Blake, in and to the estate of Mrs. Bostwick, as settled by a decree in Equity of the Superior Court of Monroe County, " saving and reserving such of her interest in and to said estate as has been heretofore by agreement with said Beall, left to further adjudication." This last plea declares that the reservation made in Blake's receipt, has reference to a reservation made in an agreement entered into on the 13th of January preceding the date of that receipt, between the plaintiff in error, Beall, Blake and all other parties in interest, touching the terms and conditions of a settlement with these parties by the executor. In that agreement it is, among other things, stipulated, that Beall, the executor, should pay over to Mrs. Powers, the pecuniary legacy in full, and one-half in value of the negroes and their hire, left to her by Mrs. Bostwick; retaining in his hands the other half of the negroes and their hire, subject, upon certain terms, to future litigation; and it declares that the reservation in Blake's receipt, is of the complainants' interest in one-half of Mrs. Powers' negroes, so agreed to be retained, and nothing more.

The defendant below, Beall, further by an amendment pleaded that complainants have no right to recover more than legal interest—that he is not by law compelled to answer as to the usurious interest, and not liable to pay it to the complainants—that they (complainants) knew at the time of their settlement with him, that usurious interest had been taken in the manage-

Beall *vs.* Blake *et al.*

ment of the funds of the estate, and that when said settlement was made, defendant agreed to make good to them all losses which they might sustain in consequence of usury in the securities turned over to them.

After argument had on these numerous pleas, the Chancellor presiding gave judgment, " that the plea insisting on an account stated, and setting forth a settlement and receipt of Samuel R. Blake, of the 2d February, 1844, and the agreement of 13th January, 1844, be sustained by the Court, so far as relates to said account stated, and agreement of 13th January, 1844, except as is in said receipt excepted, *as a defence in part,* and that said plea do *stand* for answer. The residue of the plea not relating to said account stated, receipt and agreement, is overruled by the Court, and the amended. plea is overruled; and that the defendant answer fully as to the usury, whether he received any, how much and when, on the money or effects belonging to said estate; and that he answer fully as to the one-half of the legacy bequeathed to Mrs. Powers, retained in his hands to await litigation—to whom it belongs, and show why he should not account to complainants for their share in said reservation."

By this judgment then, 1st. The plea in bar, founded on the account stated, agreement and receipt of Samuel R. Blake, is sustained, except so far as concerns the complainants' interest in one-half of Mrs. Powers' legacy retained by the executor. The effect of this judgment, is to deny the complainants' right to an account and answer, as to all matters embraced in the settlement of 2d February, 1844, and all claim to such accounting is extracted from the bill. This plea is expressly adjudged *a defence in part;* that is, a defence to the demand in the bill, that the executor account and settle with complainants generally, and it is ordered to *stand for answer.* The rule is, that when a plea is ordered to stand for an answer, it is allowed to be a *sufficient answer* to so much of the bill as it covers, unless by the order, liberty is given to the plaintiff to except. *Kirly vs. Taylor,* 6 *Johns. Ch. R.* 242. *Orcutt vs. Orms,* 3 *Paige,* 459. *Goodrich vs. Pendleton,* 3 *Johns. Ch. R.* 394, *Meeker vs. Marsh,*

1 *Santon N. J. R.* 198.  2 *Daniel's Ch. Pr.* 801, *note* 2.  *Lord Redesdale,* 304.  *Sellon vs. Leacon,* 3 *P. Williams,* 339.  *Maitland vs. Wilson,* 3 *Atk.* 314.  *Lecropt vs. Dempsey,* 4 *Paige,* 124. *Story's Eq. Pl,* §699.

Here no liberty to except is reserved; the plea is not only ordered to stand for an answer, but it is adjudged a good defence in part; I conclude therefore, that the plaintiff in error is bound to render no farther answer to the bill, so far as it relates to any and all subject matter covered by the plea.  As to them the plea is a *sufficient* answer.  This view of the matter is conclusively demonstrated to be the view of the Chancellor presiding; for the judgment proceeds, second, to declare as to what matters and things the defendant shall answer.  " *Expressio unius est exclusio alterius.*"  It orders him to answer as to the usury and as to the one-half of *Mrs. Powers'* legacy retained in his hands.  Why the defendant, Beall, should be ordered to answer as to the one-half of Mrs. Powers' legacy retained, is to me wholly incomprehensible, since the complainants claimed as to that legacy nothing whatever, but that it should be subject to abatement, and all that part of the bill which sets up this claim to abatement, was, as we have seen, upon complainant's own motion, stricken out.  3d. All other grounds of defence to the bill, except those sustained as before stated, were overruled. Now let it be remarked just here, that we are not called upon to consider any judgment rendered by the Court on the pleas of the executor.  Whether the Court ruled right or wrong in sustaining the plea which was sustained—or in ordering the plaintiff in error to answer as to Mrs. Powers' legacy, or in deciding that he was bound to answer as to the usury, and was legally bound to account with plaintiffs relative thereto, is not for us to consider.  These rulings were not excepted to at the time; they are not now before us by writ of error.  Many if not all the grounds taken in the overruled pleas, are taken in the answer. How far they or any of them will be available still as defences in the answer, we are not now invoked to say.  Our duty now is to determine whether the exceptions to the answer were rightly sustained.

Beall *vs.* Blake *et al.*

After then, the amendment to the bill, and after the judgment of the Court on the pleas, what was the bill, so far as it relates to the obligation of the plaintiff in error to answer? It was a bill calling upon him to account, as touching usury charged to have been made by him out of the funds of the estate, and as touching the interest which the complainants have in the one-half of *Mrs. Powers'* legacy. It was this and no more. To this bill, by the usual Equity practice, he was bound to answer, and to this bill he was required to answer, by an express judgment of the Court. To this bill he did answer, and the question is, did he answer fully? Arrived at the question, after so great preliminary toil, I shall dispose of it briefly.

[2.] If a defendant fails to plead, consenting to answer, or if his pleas are overruled and he is ordered to answer, he must answer fully. Vague generalities are not sufficient, for *dolus latet in generalitres.* Nor will excusatory statements or argumentative responses suffice. The defendant must meet the *matter and substance* of the plaintiff's allegations fairly and fully. The plaintiff is entitled to such disclosures touching the charges in his bill, if in the power of the defendant to make them, as will enable the Court to decree upon them. The defendant is called into Chancery to reveal facts. If matters are charged as being within his own knowledge, and as having transpired within seven years, he must answer positively upon his knowledge; and if not so charged, upon his information and belief. This is the general rule, yet subject to modification to some extent. (8 *Geo. R.* 516.) This rule goes upon the idea that the answer is a thing of conscience and must be made *ex animo*, without evasion or reservation. Such matter as may be set up in defence in the answer, the defendant may state, although not responsive to the bill. Upon the answer thus fairly made, and the proofs, the Court is enabled to do justice between the parties. A purpose to reach *the truth*, in order to execute justice, by an appeal to the conscience, lies at the foundation of the theory of Equity jurisdiction, and the Courts labor to make the practice conform to the theory. General affirmations or denials may be literally true, yet evade the very point of the charge. The

facts upon which they are based ought to be stated, that the Court may judge of the equity which they involve, and thus judging, decree.

[3.] If the plaintiff resorts to sifting interrogatories, they must be answered. Interrogatories, however, can neither enlarge nor contract the allegations in a bill; they cannot make a case different from that which is charged; nor will a plaintiff in Equity be tolerated in an unrestricted inquisition into things foreign to his case. The rule upon this subject is, that the defendant is bound to answer all interrogatories which are material; that is, all which grow fairly out of the matters charged. What are and what are not material interrogatories, is not very easily determinable; perhaps the best criterion is this, to wit: if the defendant should answer in the affirmative, and the admission would be of any use to the plaintiff in the cause, either to assist his equity or to advance his claim to relief, the interrogatory is material. *Story's Eq. Plea.* §853. *Kurpers vs. Dutch Reformed Church,* 6 *Paige,* 570. *Mitf. Eq. Ple. by Jeremy,* 306. *Gresley on Evid.* 17, 18, 20. 2 *Danls. Ch. P.* 246, 248. *Hirst vs. Pierce,* 4 *Price Rep.* 394. *Hare on Discovery,* 160, 162, 298. *Cooper's R.* 212.

[4.] When a bill is filed for an account, as this, the plaintiff is entitled to the fullest information the defendant can give him by answer, not " by long schedules in an oppressive way, but by giving the best account possible, stating how it is, and referring to books of account and other vouchers, so as to make them part of the answer, and giving the fullest opportunity of inspection." *Story's Equity Pl.* §856. 2 *Daniel's Chancery Pr.* 257, 258. 2 *Mylne & Keene,* 35. *White vs. Williams,* 8 *Vesey* 193, *note a.* 11 *Sim.* 401. *Davis vs. Mapes,* 2 *Paige,* 105.

And where defendant has in his power the means of acquiring the information necessary to enable him to make the discovery called for, he is bound to make use of such means, whatever pains or trouble it may cost him. 2 *Daniel's Ch. Pr.* 832. *Taylor vs. Rundell, C. & Ph.* 104. *Earl of Glengall vs. Frazer,* 2 *H.* 99. *Stuart vs. Ld. Bute,* 12 *Sim.* 460. Applying these

rules to this bill and answer, I think we shall find no difficulty in arriving at the conclusion that the exceptions were well taken and properly sustained.

The bill as to the usury, charges "that the defendant held and used said estate ever since 1834, for his own benefit and emolument; that from being a man of very small property, he has become wealthy from the use of said estate ; that he has loaned out the moneys arising from said estate, and from hire of negroes and rent of land annually, at usurious interest, as high as twenty-five per cent. and compounding the same by renewal, and yet he has rendered no account of usurious interest received by him." In reference to these charges, it prays that the defendant may be compelled to make a complete and perfect and full account and return of all the interest, legal and usurious, which he may have executed or received for or upon moneys belonging to said estate. The answer in response states "that in his acts, *as executor of Rebecca Bostwick*, he made no usury. When he as executor of said will, received money due the estate he charged himself with the amount and made a return of the same to the Court of Ordinary, regularly. He made and held himself responsible to the estate for the whole amount of such principal sum received, with legal interest, free from any loss of bad debts to the estate, or any loss of interest, because the money could not be loaned out ; for which he has accounted to the legatees in full, and to complainants in this bill. Any usurious transactions he may have had with other persons, was on his own account, and not with the funds that he *regarded the funds of the estate properly so called,* because he charged himself with so much money as he collected, and the moneys then so collected were mixed with his own funds, which he used in business of various kinds, and among other things loaned out some money. The defendant did not keep separate the funds of the estate from his own, nor did he ever keep an account of extra or usurious interest made by him, and could not now, even if required, speak with any certainty of these individual transactions of his own, in which he exacted usury. But defendant would say that he has no doubt, and does believe, that the sum

of principal and legal interest which he turned over to the lega-tees, exceeds all the legal and usurious interest and principal which came to his hands, or which he may have made by any of the dealings of his with the estate, when the losses are considered, which fell alone on him."

This extract embraces all the discovery made about the usury; other statements are made, which are defensive only. The exceptions are eight in number. Those alone are to be considered which relate to the answer in response to the usury allegations, and the allegations relative to Mrs. Powers' legacy. The order to answer confines the answer to these two subject matters. The exceptions are to be confined to the answer which, by the ruling of the Court, the defendant was compelled to make. He has the right to stand upon the judgment of the Court, so far as it exempted him from liability to answer. As before stated, the sustained plea being ordered to stand for an answer, is a full answer to all facts of the bill covered by that plea. The exceptions to the answer responsive to the usury allegations, without considering them separately, *assert* that the answer is evasive and indirect, and in many parts argumentative; that defendant does not answer facts to the best of his knowledge, remembrance and belief; that defendant does not attach to his answer an account of his dealings, (usurious dealings as I understand the exception,) for and on account of the estate for many years; that defendant does not set forth the amount received and turned over to the legatees, nor the amount of losses sustained on usurious transactions, or in bad debts ; that he does not state the amount of money belonging to the estate, which was mixed up with his own funds ; what amount of interest he made upon the fund thus mixed, and what *per centum* he was in the habit of exacting on loans, and that he does not answer whether or not he received any usury on the money belonging to or derived from the estate, but as to this point answers evasively, by saying, " in his acts as executor of Rebecca Bostwick, he made no usury." These complaints are legitimate, and by reference to the answer we find to be true. The answer deals in generalities and argumentative statements—statements which

may be literally true, and which, at the same time, evade the very point and substance of the charges—statements which afford no facts which will aid the Court in rendering a decree. The body and strength of the complainants' allegations is, that the defendant has received into his hands, as executor, a large estate in cash, which he has, for many years, used in usurious loans, at twenty-five per centum, and that he is liable to them for their proportion of the amount realized by him from such use. It is no sufficient response to say roundly, that as *executor*, he made no usury; that he mixed the funds of the estate with his own, and used the united fund in business of various kinds, and *loaned out some money;* that these lending transactions were personal, and that he did not use, in this way, any funds which he *regarded* as the funds of the estate, *properly so called.* The plaintiff has a right to a specific answer to his charges, by a statement of facts, amounts, dates, &c. either positively upon his knowledge, or to the best of his knowledge, remembrance, information and belief. The defendant ought to say what amount of the funds of the estate was employed in usurious loans—what contracts were made, when and with whom—at what rate of interest, how often renewed, and the actual profit realized, and exhibit an account of the whole. If this is impossible, because the funds of the estate were mingled with his own, he ought to exhibit the amount of the joint fund, from time to time employed in usurious transactions—what proportion belonged to himself, and what to the estate—what rate of interest was exacted, and what profits were realized. There is no such thing as separating his individual and representative character. The question to be answered is, what funds of this estate did he thus use, and what profit did he make on that fund? Let it be true, that he charged himself with principal and legal interest, and held himself liable for bad debts, that does not acquit him of his obligation thus to answer fully. The law does not however, require impossibilities of a defendant in Equity.

[5.] When he has used all the means in his power to acquire the desired information, regardless of pains and trouble, and has

answered fully according to his knowledge, information, remembrance and belief, whether it be satisfactory to the plaintiff or not, he has discharged the full measure of his legal obligations. The ruling of the Court in sustaining the exceptions as above stated, to the answer of the defendant responsive to the bill upon the subject of usury, is sustained. The exceptions all seem to have reference to the charges as to usury; yet, in the argument, it was insisted that the answer was not full as to those parts of the bill which relate to the legacy of Mrs. Powers. Those parts we have seen were stricken out; but we take the case as we find it. The defendant was ordered to answer to them, and it is insisted that the answer filed, responsive to them, is not full. The last exception may, doubtless was, intended to apply to this part of the answer, as well as to the part relative to the usury. It is that the defendant does not answer facts to the best of his knowledge, &c. He does not state facts. He sets up in defence the demurrer to the bill, the amendment, by striking out all the allegations relative to Mrs. Powers' legacy, and that complainants are not entitled to any part of this legacy, it being a specific legacy. It is not a full answer. Defendant must state the amount of the legacy retained—in what it consists—its issues and profits—why retained—what portion of it has been paid over, and every other fact in relation to it, material to aid the Court in rendering a decree, if, indeed, the Court can ever decree any thing relative to this legacy, on this bill.

Let the judgment be affirmed.