JAMES WHITE, *Treasurer,, versus* CHARLES FOX & *al.*

The duties of clerk of the courts, holden by the County Commissioners, are a part of the duties of the clerk of the Judicial Courts of the county; and he is entitled to receive the fees therefor, and is required to render an account of the same in the same manner as for fees received as clerk of the Supreme Judicial Court and District Court.

A clerk of the Courts is required by law to perform many duties, as part of the duties of the office, for the performance of which no compensation is provided in the fee bill; but he is not entitled to be specifically paid for them, or for his attendance in the Courts; being compensated therefor only by the fees which are allowed in the fee bill for the performance of other duties.

But if the clerk does charge for duties performed for which no compensation is provided in the fee bill, such as attending in Court, making dockets, indexes, &c., and those charges are allowed by the County Commissioners and paid to him, he is bound by the statute to account for the money, thus received, in the same manner as for that received for services where the fee bill does provide compensation.

The term of office of the clerks of the Judicial Courts was not terminated, and new appointments made by law, when the Revised Statutes went into operation, but they continued as clerks under their previous appointments.

Nor are the sureties of a clerk discharged by the provisions of Revised Statutes, c. 100, § 7, " in case he shall neglect or refuse to pay over any sum, for which he is accountable" by virtue of the Statute provisions, nor by a change by law in some of the duties of the office.

DEBT on a bond, dated April 20, 1841, given by Charles Fox, as principal, and by the other defendants, as his sureties, the condition of which recited, that Charles Fox had been appointed " Clerk of the Judicial Courts within and for the County of Cumberland," and then proceeded. " Now if the said Charles Fox shall well and truly do and perform the duties of said office, and fulfil all the requirements of the law touching the same, then this obligation shall be void," &c.

Mr. Fox was a member of the house of Representatives in the winter session of 1841, and having been appointed clerk in the place of Mr. Cobb, removed, entered upon the duties of the office on April 28, 1841. He held the office until January 26, 1842, when he was removed, and Mr. Cobb, who had been re-appointed, entered upon the duties of the office.

The statutes in force during the time provided, that each of

the clerks shall keep a true and exact account of all the moneys he shall receive, or be entitled to receive, for services by virtue of his office, and shall annually, on the first Wednesday in January, render to the treasurer of his county under oath, a true account of the whole sum thus accrued; and after deducting his own salary, pay over the residue, if any, of the gross amount, to the treasurer of his county, for the use of the county." The clerks were severally permitted to retain the sum of $1000, "if so much shall have accrued to them during the year preceding, and in the same proportion for any less time than one year; and in addition, one half of all the fees of office to them respectively accrued, over that sum or proportional part thereof, as their salaries."

The account, and the only one, rendered by Mr. Fox, was signed by him and under oath, was dated January 5, 1842, and was in these words. " Amount of fees received by the subscriber as clerk of all the Judicial Courts for the County of Cumberland, for the past year, for entries, continuances, ex'ons. copies, &c. &c., amounting to the sum of nine hundred twenty-seven dollars and forty cents." It was agreed, that Mr. Fox, during the time he was in office, preceding the first Wednesday in January, 1842, received the said sum of $927,40, and in addition thereto the sum of $780,79, " for services as particularly set forth and articulated in the three bills charged to the County of Cumberland, copies of which are hereunto annexed and make a part of this case, said bills were severally allowed by the County Commissioners for said County of Cumberland, and the several amounts thereof were paid to him, the said Charles Fox." And also in addition, the sum of $18,00, for " issuing venires, &c." It was admitted that said Fox, during the time he was in office, for services prior to January 5, 1842, received in the whole the sum of $1726,19, and had not paid over any part of it, and claimed the right to retain the whole for his own use. Of this sum $773,75, were for charges prior to August 1, 1841, when the Revised Statutes went into operation. Among the various items of charge in the " three bills" allowed by the County Commissioners, and the amount paid

to Mr. Fox, those for attending the Supreme Judicial Court, District Court, and County Commissioners, amounted to $236, those for making "dockets" to $209,29, those for "indexes to records," 31,00, one for issuing twenty-eight warrants to the assessors of the several towns to assess the county tax, at 20 cents, $5,60," one for "keeping account of Justice's attendance, April Term, $0,75," one "for calculating and making up jury districts and equalizing jurors, $6,00," "issuing venires for jurors, June Term, and keeping an account of time, &c. &c. and certifying the same to the county treasurer, $5,00, ; Commissions on $62,50, costs in criminal prosecutions paid treasurer, $3,11; do. on $63,00, jury fees, paid do. $3,15"; with various other charges, some of the same character, and some of a different description.

If the plaintiff was entitled to recover, a default was to be entered and the Court was to assess the damages — otherwise a nonsuit was to be entered.

*A. Haines*, County Attorney, argued for the plaintiff, citing and commenting upon the statutes on this subject.

*Codman & Fox* argued for the defendants. The points of defence and the statutes referred to by the counsel are stated in the opinion of the Court.

The opinion of the Court was afterwards prepared by

SHEPLEY J. — This is an action of debt brought by the Treasurer of the State against Charles Fox, formerly clerk of the Judicial Courts in this county, and his sureties, on his official bond. It appears from the agreed statement of the facts, that Mr. Fox was appointed clerk, and that he entered upon the performance of his duties on April 28, 1841, and that he continued to hold the office and to perform the duties until Jan. 26, 1842.

The statute, which authorized the appointment, c. 90, § 1, provided, that the person appointed should be clerk of all the Judicial Courts. The second section provided, that the clerks should "keep a true and exact account of all the moneys they shall receive by virtue of their office, and shall on the first

Wednesday of January annually, render to the treasurers of the respective counties, under oath, a true account of the whole sum thus by them received." Mr. Fox rendered his account to the treasurer of the county on January 5, 1842, of fees received as clerk of all the Judicial Courts for the past year; but did not include therein the fees received by him for services performed by him as clerk of the County Commissioners. It is contended, that they ought not to have been included, because his appointment as clerk of the Judicial Courts did not include that clerkship; and that those fees were not received by virtue of his office. It is true that by virtue of that appointment and commission only, without the aid of the law, he would not become the clerk of the County Commissioners. But in the act providing for their appointment, c. 500, § 2, it is declared, "and the clerks of the Judicial Courts within the several counties shall be clerks of the County Commissioners." And in the Revised Statutes, c. 99, § 9, is a like provision, that, "the clerk of the Judicial Courts in each county shall be the clerk of the Commissioners." He was therefore entitled to perform the duties and to receive pay as clerk of the Commissioners, because he was clerk of the Judicial Courts, and without doing it, by virtue of holding that office, he could lawfully have done neither. By virtue of the above statute provisions those duties became part of the regular and established duties of the office; and are therefore quite distinguishable from the duties of another office, such as the register of deeds, which the clerk in case of a vacancy is required to perform for a limited time only; not as a part of his own duties as clerk, but as the duties of the vacant office. The compensation, which he received as clerk of the Commissioners, could have been lawfully claimed and received by virtue of his office, and only by virtue of it; and the money so received should have been accounted for to the county treasurer.

It is also contended, that he ought not to have accounted for any fees or compensation not provided for in the fee bill; and that the amount received in payment for making dockets

and indexes was not received by virtue of the office, but as an individual employed to perform that business. Clerks may by virtue of their office claim and receive for fees more, than the law allows ; but it appears to have been the design of the law, and such is its language, that they " shall keep a true and exact account of all the moneys, they shall receive by virtue of their office." The only question therefore is, whether the amount received for doing that business was received by virtue of the office. The statute provides, that the clerk "shall have the care and custody of all the records, files and proceedings," and that he " shall do and perform all the duties, services, acts, matters and things, which he as clerk of either of said Courts ought by law to do and perform." The statute does not profess to enumerate every duty which the clerk ought by law to perform ; or in the fee bill to annex a compensation to every such duty. The omission thus to provide for a compensation for the performance of many duties, well known to have been always performed by the clerks, does not indicate an intention on the part of the legislature, that they should not continue to be performed by them as a part of their duties of office ; or that they should be specifically paid for them, or for their daily attendance in Courts. All these matters were doubtless expected to be compensated by the fees, which are allowed for other duties. And hence it will be perceived, that it is very short sighted legislation to reduce the fees of such officers to the sums, which would only be a reasonable compensation for the performance of each act named in the fee bill. For the duties of the clerk are much more extensive and burdensome, than these would be. Many of his duties are not named in the statutes, but are imposed by the common law, which regards him as the assistant and servant of the Court, to enable it to perform its duties with more facility, economy, and usefulness to the citizens, as well as to make a record of its proceedings. Among other duties not enumerated in the fee bill he is required to examine the returns upon the venires and to make out a list of the jurors, to call and swear them, to take their verdicts, to impannel them for the trial of persons

accused of offences, to read the indictments, to produce papers from the files, to make out a list of the actions, or docket, for the use of the Court with an index and a notice of what has been the disposition of each action at the former terms of the court, to make indexes to the records, and to perform various other matters. These matters, although not named in the fee bill, are matters properly appertaining to the duties of the office of clerk; and the amount received for the performance of them must be considered as received by virtue of the office. And the larger portion of the amount contained in the accounts allowed by the County Commissioners should have been included in the account rendered to the county treasurer. If there should be any difficulty respecting the amount, it may be determined on a hearing in chancery.

But it is contended further, that as the act, under which he was appointed clerk, was among those enumerated as repealed by the Revised Statutes, that his former appointment as clerk terminated on the first day of August, 1841; and that the accounts should commence anew from that day upon a new appointment.

The fourth section of the repealing act provides, that " all the provisions of the laws" repealed, " which are contained in the Revised Statutes, shall be deemed to have remained in force from the time when such previous laws began to take effect, so far as they may apply to any office or trust, " notwithstanding the repeal of the statutes." The provision of the statute, c. 90, for the appointment of clerks, and most of its other provisions, are contained in c. 100, of the Revised Statutes. The first section of the chapter last named provides, that " the clerks now in office shall continue to hold their offices according to the tenor of their respective commissions." The effect of these provisions, considered together, is to continue the clerks in office in the same manner, as if the Revised Statutes had not repealed the former act. It is not indeed repealed so far as it respects the office of clerk. There is therefore no just reason for contending, that there was a new appointment made by law on the first day of August, 1841.

And of course the accounts should not commence anew on that day.

It is also contended, that the sureties were discharged by a clause in the Revised Statutes providing that " in case he shall neglect or refuse to pay over any sum, for which he is accountable under the provisions of this chapter, he shall pay interest thereon at the rate of twenty-five per cent. by the year until paid." The sureties were bound for the faithful performance of the duties of the office, that is, for the faithful performance of such duties, as the laws for the time being should require to be performed by the clerks of the judicial courts. If the sureties on the official bonds of persons holding offices created by law, and the duties of which are prescribed by law, were to be discharged by every change of the law relating to the duties, it would in these days of over frequent change, be to little purpose to trouble the officers to obtain sureties. There is little of similarity between such cases, and those arising out of offices or trusts, whose duties are assigned or regulated by contract.

*Defendants are to be defaulted.*