## JOHN A. PRICKETT *et al.*

### *v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

1. WILL—*bequest to poor of county construed.* A bequest of money "to the poor of" a certain county, is one to the poor of the county in a technical sense,— that is, those whom the county is under legal liability to support, and being such, the county board of the county has the right to the custody and control of the fund.

2. COUNTY TREASURER—*extent of liability of his sureties.* A county being liable for the support of its paupers, its board is exclusively interested in a fund dedicated or given to the poor of such county, and in its management and control, and this being so, it so far partakes of the nature of public revenue, as to make the county treasurer its proper custodian for the county, and his sureties will be liable if he fails to account for and pay over the same to his successor.

3. SAME—*liability of sureties for refund tax.* The refund tax paid by the State to the several counties, under the act in force March 26, 1875, entitled "An act to declare and constitute the State of Illinois sole trustee of that portion of the State tax levied, assessed and collected for the year 1873 in excess of twenty-nine thirty-sixths thereof, and to provide exclusive remedies for the complete refunding of the same to the tax-payers of the State who have paid such excess, and for the protection of tax-payers entitled thereto, and of counties and all officers and persons connected with the collection, custody or payment thereof," is essentially public revenue, appertaining to the office of county treasurer, and being so he and his sureties are amenable to the county for a faithful accounting of such fund, the same as any other public funds of which he is by law the custodian.

4. SAME—*liability of sureties under subsequent law.* The provision of the act of 1874, (R. S. ch. 36, sec. 4,) which provides that the county treasurer shall receive and safely keep the revenues and other public moneys of the county, and all moneys and funds authorized by law to be paid to him, and disburse the same pursuant to law, is a change the legislature had the clear right to make as against prior sureties of such officer. It must be *held,* that sureties signing the bond of public officers, do so in contemplation of a change in the law.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. CHARLES P. WISE, and Mr. JOHN G. IRWIN, for the appellants.

Messrs. KROME & HADLEY, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an action of debt, on the official bond of Thomas H. Kennedy, as treasurer of Madison county, against him and his sureties. There are three breaches assigned in the declaration, the facts in respect to which are established by the stipulation and agreement of the parties. From the record

it appears that said Kennedy was legally elected treasurer of Madison county at the November election, 1873 ; that he gave bond as required by law, and entered upon the discharge of his duties as such treasurer on the 1st day of December, 1873, and continued to be treasurer of said county until the 1st day of December, 1875. Failing to account for and turn over the money to which the county was entitled, this suit was instituted, which resulted in a judgment in the court below for the plaintiff, for the sum of $9944.16, to reverse which this appeal is prosecuted.

It appears that the county was the owner of a special fund of money, derived from a source other than taxation, and which had been, by the order of the county board, placed in the county treasury, for the purpose of being used by the county to discharge its legal obligations, and that at the close of his term of office he held, of said fund, the sum of $4729.97, which he has neglected and failed to account for and pay over to his successor in office. It appears that on the 6th day of May, 1875, said defendant Kennedy, under and by virtue of an act of the General Assembly of the State of Illinois, approved and in force March 26, 1875, entitled "An act to declare and constitute the State of Illinois sole trustee of that portion of the State tax levied, assessed and collected for the year 1873, in excess of $\frac{29}{36}$ thereof, and to provide exclusive remedies for the complete refunding of the same to the tax-payers of the State who have paid such excess, and for the protection of tax-payers entitled thereto, and of counties and all officers or persons connected with the collection, custody or payment thereof," received from James T. Cooper, collector of said county, $7000, and that at the close of his official term he held, and now holds unaccounted for, and turned over to his successor in office, the sum of $506.49, part of said $7000. It also appears, that at the request of the defendant Kennedy, James T. Cooper, collector of said county, paid out of the revenue for 1874, to the persons entitled to the benefits of such refunding fund last above mentioned, $4707.70, it being claimed

by said collector that said last named sum was paid out by him on the faith of an understanding and agreement between the collector and treasurer, that upon production and delivery by such collector to the treasurer, of receipts taken from the tax-payers entitled to the benefit of the refunding fund, the treasurer would give the collector a receipt on account of moneys derived from the county revenue of the year 1874, for an amount equivalent to the amount of the refunding fund receipts thus procured and delivered to him, but no receipt was ever given by the treasurer to the collector in accordance with such understanding.

It appears, that this special fund first above named was derived through the last will and testament of one Henry Seibert, late of said county, deceased, by the terms of which he bequeathed "to the poor of Madison county" certain sums of money, to be realized from the sale of some real estate by said will directed to be made, $4729.97 of which remains in the hands of said defendant Kennedy, unaccounted for to his successor in office. But, it is insisted by counsel for the sureties that there is a fund, of which, by the law at the time this bond was given, the treasurer was not the legal custodian; that the act of the treasurer in receiving and holding the same was an individual act, and not an official act, and, as a consequence, they are not liable for its payment. This involves the question of whether this fund belonged to the county or not, for if so, it must be admitted, we think, that the county treasurer was its proper custodian. "The poor of Madison county," as employed in this bequest, means the poor of the county in a technical sense,—that is, those poor people whom the county is legally liable to support, as has been decided by this court in *Heuser et al.* v. *Harris et al.* 42 Ill. 436. In the light of this construction of the will, the county board, in its official capacity, assumed control of said Seibert fund, so called, and by its order, duly entered of record, directed that the same be turned over into the treasury of the county. It also appears, that in pursuance of such order said

fund was placed in the hands of said Thomas H. Kennedy, and was charged to his account as treasurer of said county; that he placed the same in the treasury along with the other money and funds of the county, and, in the quarterly statements rendered by said defendant Kennedy to the county board, he charged himself with this fund, which statements were approved by said county board. The county, being liable for the support of these paupers, was exclusively interested in the custody, management and control of the fund dedicated and set apart for such purpose, and, that being the case, it so far partakes of the nature of public revenue as to make the treasurer its proper and official custodian, and the treasury its proper repository.

The 9th section of said act of March 26, 1875, provides, that the balance and residue remaining uncalled for by persons entitled thereto, within two years from the time said act took effect, shall be used as county revenue by said county, thus appropriating for the benefit of the county any and all such sums as were not accounted for within the time limited. By the 7th section of the act above referred to, it is declared that the amount so paid to the county treasurer, in pursuance of that act, should be received by him in his official capacity, and should be credited to a trust fund for the use of the taxpayers entitled thereto, to be termed the refunding fund of such county; and this act characterizes this fund as revenue, and also the capacity in which county treasurers should receive and hold the same, and the county had such an interest in it as to entitle it to recover from a wrong-doer.

Thus it is seen that this fund is essentially public revenue, appertaining to his office of county treasurer, and being so, the treasurer was amenable to the county for a faithful accounting in respect to this fund, the same as any other of the public funds of which by law he was the custodian. The legislature passed an act in relation to county treasurers in February, 1874, which went into force July 1, 1874. (Rev. Stat. chap. 36.) Sec. 4 of the chapter provides that the county treasurer

shall receive and safely keep the revenue and other public moneys of the county, and all moneys and funds authorized by law to be paid to him, and disburse the same pursuant to law. This is a change in the law which the legislature had the clear right to make, and it must be held that the sureties of the treasurer signed the bond in contemplation of the possible exercise of this undoubted power, and we think constitutes no ground of defense to the claim of the county for this fund. These two sums, aggregating $5236.46, we think should have been the amount of the judgment in the court below, but the court, in assessing the plaintiff's damages, included the sum of $4707.70, which, by some private understanding between the collector and treasurer, the former had refunded to the tax-payers out of the revenue of 1874. The same never having been paid into the treasury, of course no liability against the defendants could arise, and it was error,—for which error the judgment is reversed and the cause remanded.

*Judgment reversed.*